Kathleen M. WINN, an Arizona taxpayer; Diane Wolfthal, Arizona taxpayer; Maurice Wolfthal, Arizona taxpayer; Lynn Hoffman, an Arizona taxpayer, Plaintiffs–Appellants,

v.

Mark W. KILLIAN, in his official capacity as Director of the Arizona Department of Revenue, Defendant–Appellee.

No. 01–15901.

United States Court of Appeals, Ninth Circuit.

March 5, 2003.

Marvin S. Cohen, Esq., Isabel M Humphrey, Esq., Sacks Tierney P.A., Scottsdale, AZ, Paul Bender, Esq., Joseph A. Kanefield, Esq., Phoenix, AZ, for Plaintiffs–Appellants.

Patrick Irvine, Esq., Joseph A. Kanefield, Esq., Phoenix, AZ, for Defendant–Appellee.

Before SCHROEDER, Chief Judge, D.W. NELSON and REINHARDT, Circuit Judges.

**ORDER**

A judge requested a vote on whether to rehear this matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed. R.App. P. 35. The request for rehearing en banc is denied.

KLEINFELD, Circuit Judge, with whom Circuit Judge O'SCANNLAIN joins, dissenting from denial of rehearing en banc:

The decision in this case sharply limits the traditional restraints on federal judicial interference with state tax systems and is in conflict with the position of the Sixth Circuit. Despite the Tax Injunction Act and federal common law on comity to the contrary, the panel held that a federal court has jurisdiction to declare a state tax statute unconstitutional and enjoin its application, so long as the effect of the judgment would be to cause the state to collect more revenue rather than less.

The Arizona statute at issue grants a tax credit of up to $500 a year for taxpayer contributions to "school tuition organizations."[1] This is similar to tax deductions for contributions to nonprofit schools, except that it is a credit against taxes owed and not merely a deduction from income subject to taxation. The credit can only offset taxes; no check is mailed by the state to the taxpayer or anyone else.[2] The panel manifested concern that taxpayers

---

1. Ariz.Rev.Stat. § 43–1089(A).

2. *Id.* at § 43–1089(B).

were claiming most of the tuition credit for tuition they paid to religious schools.[3]

The Tax Injunction Act says: "The District Courts shall not enjoin, suspend, or restrain the assessment, levy or collection of any tax under state law where a plain, speedy and efficient remedy may be had in the courts of such state."[4] The decision in this case holds that the challenge to the Arizona tax statute isn't a challenge to an "assessment," because the word refers only to estimation of the value of property or income and imposition of a tax thereon.[5]

Even under this definition, the decision's reasoning does not support its holding. The tax credit amounts to a decision by the Arizona legislature that a taxpayer's income does not include money the taxpayer contributes to a school tuition organization (like a deduction), and goes further than a deduction only in subtracting the amount "above the line," from taxes, rather than below the line. Tax credits are commonly used, by Arizona as well as other states, to encourage conduct (such as installing solar water heaters, in Arizona[6]) even among lower-earning taxpayers who do not itemize deductions.[7] So understood, the tuition credit does indeed amount to an "assessment," because it is an element of the Arizona tax system's estimation of the value of income and imposition of a tax thereon.

The panel's narrowing construction of the Tax Injunction Act ought to have been rejected. The panel relied on definitions of "assessment" from a lay dictionary.[8] Had they looked in a different lay dictionary, the panel would have found a definition contrary to the one it preferred, such as "the entire plan or scheme fixed upon for charging or taxing."[9] There would be no way to argue sensibly that the Arizona tuition credit wasn't part of "the entire plan or scheme fixed upon for charging or taxing." This broader definition comports with the ordinary meaning of "assessment" as the process of calculating a person's final tax bill after all deductions and credits are accounted for.

Had the panel considered tax treatises and law dictionaries to determine what "assessment" meant, it would have found much in accord with this broader definition. For example, "assessment" is defined as "determining the share of a tax to be paid by each of many persons."[10] It is also defined as "the process of ascertaining and adjusting the shares respectively to be contributed by several persons"[11] such as an individual's final tax bill. Plainly, Arizona uses the tuition credit as a means of determining the amount of tax to be paid by each person.

Even the federal income tax code supports a broad reading of "assessment." The federal income tax code provides that "assessment shall be made by recording the liability of the taxpayer."[12] Thus, un-

---

3. See Winn v. Killian, 307 F.3d 1011, 1014 (9th Cir.2002).

4. 28 U.S.C. § 1341 (2000).

5. Winn, 307 F.3d at 1015.

6. Ariz.Rev.Stat. § 43–1090.

7. See id. at § 43–1041.

8. Winn, 307 F.3d at 1015 (citing RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 90 (1979)).

9. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 131 (1981).

10. BLACK'S LAW DICTIONARY 116–17 (6th Ed.1990).

11. Id. at 116.

12. 26 U.S.C. § 6203 (2002).

der the congressional understanding in the tax code, "assessment" refers to the bottom line, how much money the taxpayer owes to the government in taxes, after consideration of any credits as well as deductions. There is no reason to think that Congress meant something narrower in the Tax Injunction Act than it did in the Internal Revenue Code. Under this understanding of the meaning of "assessment," plainly the Tax Injunction Act deprives the federal courts of jurisdiction to enjoin states from granting tax credits as part of the calculation of taxes due.

The district court dismissed the case in light of the general understanding federal judges have long had of the broad scope of the Tax Injunction Act. As the Supreme Court put it in *Rosewell v. LaSalle National Bank:* "The Tax Injunction Act generally prohibits federal district courts from enjoining state tax administration except in instances where the state court remedy is not plain, speedy and efficient." [13] This broad understanding does not allow for the niggardly parsing of the word "assessment" adopted by our panel. The Supreme Court and lower courts have interpreted the Tax Injunction Act broadly, declining federal jurisdiction provided that an adequate remedy existed in the state courts. [14]

The panel cites only one case in support of its view that the Tax Injunction Act doesn't speak to cases where, if the plaintiff succeeds, the state will collect more taxes. But the Seventh Circuit case cited, *Dunn v. Carey,* [15] doesn't speak at all to tax credits. And it doesn't construe the term "assessments." It was a dispute about whether taxpayers could use federal court to enjoin local taxes imposed pursuant to a federal consent decree. [16]

Even if the Tax Injunction Act did not require that the panel's holding be overturned, established federal common law of comity would. As the Supreme Court has noted, the Tax Injunction Act "reflect[s] the fundamental principle of comity between federal courts and states governments that is essential to 'Our Federalism.'" [17] *Rosewell* teaches that "even where the Tax Injunction Act would not bar federal court interference with state tax administration, principles of federal equity may nevertheless counsel withholding of relief." [18] Indeed, long before Congress passed the Tax Injunction Act, federal courts ordinarily declined jurisdiction over challenges to state taxes. [19] Congress certainly had a special concern about federal judicial decisions that would directly interfere with collection of state taxes. But Congress did not reject the already established broader principles of federalism and equity protecting states from federal judi-

---

13. *Rosewell v. LaSalle Nat'l Bank,* 450 U.S. 503, 512, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981).

14. *See, e.g., California v. Grace Brethren Church,* 457 U.S. 393, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982); *Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943); *In Re Gillis,* 836 F.2d 1001 (6th Cir.1988).

15. 808 F.2d 555 (7th Cir.1986).

16. *See id.* at 557–58.

17. *Fair Assessment in Real Estate Ass'n. v. McNary,* 454 U.S. 100, 103, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981).

18. *Rosewell,* 450 U.S. at 525 n. 33, 101 S.Ct. 1221 (citing *Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 301, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943)).

19. *See, e.g., Matthews v. Rodgers,* 284 U.S. 521, 52 S.Ct. 217, 76 L.Ed. 447 (1932); *Singer Sewing Machine Co. v. Benedict,* 229 U.S. 481, 33 S.Ct. 942, 57 L.Ed. 1288 (1913); *Boise Artesian Water Co. v. Boise City,* 213 U.S. 276, 29 S.Ct. 426, 53 L.Ed. 796 (1909).

cial meddling in their tax systems.[20] The Supreme Court recognized this in *Fair Assessment in Real Estate Ass'n v. McNary*.[21] Regardless of the Tax Injunction Act, the *Fair Assessment* Court held, as a matter of comity, that damages actions cannot be brought under 42 U.S.C. § 1983 to redress unconstitutional administration of state tax systems, because of the disruptive effect such actions would have on state tax systems.[22]

· What this means, as a practical matter, is that federal district courts are required to dismiss claims asserting challenges to state tax systems, whether they are constitutional or not, and whether they are technically within the Tax Injunction Act's ban or not, so long as there is an adequate state remedy available. The district court did just what the law requires. The panel does not contend that state law in Arizona, administered by our colleagues on the Arizona courts does not afford an adequate remedy for unconstitutionality. Nor could they, as Arizona provides a means to challenge its tax code and allows parties to raise federal constitutional challenges to its provisions. Indeed, this very tax credit was challenged on constitutional grounds throughout the Arizona courts. The Arizona Supreme Court provided a thoughtful and scholarly opinion on the merits of the constitutionality of the tax credit at issue in this case.[23] The Arizona Supreme Court is reviewed, as we are, by the Supreme Court of the United States, and,

having had the Arizona Supreme Court decision brought to its attention, the Supreme Court of the United States declined to grant certiorari.[24]

State judges take the same oath to uphold the federal Constitution that we do, and like us are subject to federal Supreme Court review. We have no justification for supposing that only we few—among all the judges of the nine states in our circuit—read, understand, or apply the United States Constitution faithfully. The implication of the panel's remark about "the federal courts' role as 'guardians of the people's federal rights' "[25] seems to be that we are the *only* such guardians, or that we are guardians of the Platonic sort. We are not. There is no excuse for relitigating the constitutionality of Arizona's tuition tax credit in federal court.

As to comity, the panel decision conflicts with the Sixth Circuit's decision in *In Re Gillis*.[26] *Gillis* found it unnecessary to decide whether the Tax Injunction Act required dismissal of a challenge to state assessment practice, because "even if the facts of a state tax matter do not technically fall within the language of § 1341, the federal courts should restrain from interfering in state proceedings."[27] *Gillis* points out that even if the effect of the federal remedy sought would be to increase taxes collectible (which was true in *Gillis*) state resources would be diverted to litigation, payment of costs and attorneys fees, and such measures as the feder-

**20.** *See, e.g., Fair Assessment in Real Estate Ass'n.*, 454 U.S. at 102–03, 102 S.Ct. 177 (discussing the state autonomy aspects of the Tax Injunction Act).

**21.** 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981).

**22.** *Id.* at 115–16, 102 S.Ct. 177.

**23.** *See Kotterman v. Killian*, 193 Ariz. 273, 972 P.2d 606 (Ariz.1999).

**24.** *Kotterman v. Killian*, 528 U.S. 921, 120 S.Ct. 283, 145 L.Ed.2d 237 (1999) (denying certiorari on the Arizona Supreme Court's decision).

**25.** *Winn*, 307 F.3d at 1017 (citation omitted).

**26.** 836 F.2d 1001 (6th Cir.1988).

**27.** *Id.* at 1005.

al court ordered to attain that relief.[28] The same is plainly true in the case at bar.

The panel opinion expresses what appears to be disdain for what it calls "isolated statements" and "dicta" by the Supreme Court in *Great Lakes* and *Fair Assessment.* I do not find it necessary to parse the Court's opinions in these cases to determine whether we can wash what they say away as dicta, because the principles enunciated are so clear and uncontradicted. We ordinarily treat Supreme Court dicta, if it is dicta, with considerable and appropriate deference.[29] And I am not so sure that the Supreme Court decisions can be properly distinguished. The *ratio decidendi* of *Fair Assessment*—disruption of state tax systems—largely applies to the case at bar. As in *Fair Assessment,* a determination that the state tax scheme was unconstitutional "would halt its operation" and "would hale state officers into federal court."[30] It was halting the system's operation and the haling of state officers into federal court that the *Fair Assessment* Court fastened on as the reason for its holding, not simply revenue collection. *Fair Assessment* held "such interference to be contrary to 'the scrupulous regard for the right independence of state governments which should at all times actuate the federal courts'"[31] because "the mere illegality or unconstitutionality of a state or municipal tax is not in itself a ground for equitable relief in the courts of the United States" as long as the federal right may be litigated in the courts of the states.[32]

In sum, the panel decision applies a highly unconventional approach to the Tax Injunction Act and the comity principles underlying it, to justify an unprecedented interference with state assessment of taxes. It creates a conflict on comity with our sister circuit, the Sixth. It disdainfully tosses away all that the Supreme Court has said on the issue as mere dicta. And as a result, the states and municipalities of our circuit can expect to spend a lot of their money and tax personnel's time on constitutional litigation in the federal courts, regardless of the remedies provided by our learned colleagues in the states' courts.

---

**28.** *Id.* at 1007–08.

**29.** *See United States v. Baird,* 85 F.3d 450, 453 (9th Cir.1996); *see also McCoy v. Massachusetts Institute of Technology,* 950 F.2d 13, 19 (1st Cir.1991).

**30.** *Fair Assessment in Real Estate Ass'n,* 454 U.S. at 115, 102 S.Ct. 177.

**31.** *Id.* at 116, 102 S.Ct. 177 (quoting *Matthews v. Rodgers,* 284 U.S. 521, 526, 52 S.Ct. 217, 76 L.Ed. 447 (1932)).

**32.** *Matthews,* 284 U.S. at 525–26, 52 S.Ct. 217.