RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 09a0036p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

COMMERCE ENERGY, INC. dba COMMERCE
ENERGY OF OHIO, INC., et al.,
                    *Plaintiffs-Appellants,*

          *v.*

RICHARD A. LEVIN, in his official capacity as
Ohio Tax Commissioner,
                    *Defendant-Appellee.*

⎫
⎪
⎪
⎪
⎬  No. 08-3410
⎪
⎪
⎪
⎭

─────────────────

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 07-00151—Michael H. Watson, District Judge.

Argued:  December 10, 2008

Decided and Filed:  February 4, 2009

Before:  MARTIN and McKEAGUE, Circuit Judges; COLLIER, Chief District Judge.[*]

─────────────────

**COUNSEL**

**ARGUED:**  Stephen C. Fitch, CHESTER, WILLCOX & SAXBE, Columbus, Ohio, for Appellants.  Barton A. Hubbard, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.  **ON BRIEF:**  Stephen C. Fitch, Gerhardt A. Gosnell II, CHESTER, WILLCOX & SAXBE, Columbus, Ohio, for Appellants.  Barton A. Hubbard, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

─────────────────

**OPINION**

─────────────────

    BOYCE F. MARTIN, JR., Circuit Judge.  Plaintiffs, in-state and out-of-state retail natural gas suppliers that market and sell natural gas to Ohio consumers and one

─────────────
    [*]The Honorable Curtis L. Collier, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation.

of their Ohio customers, sued Ohio's Tax Commissioner, Richard Levin. They alleged that Ohio's tax scheme is discriminatory and thus unconstitutional under either the Commerce Clause or Equal Protection Clause because four local natural gas distribution companies benefit from certain tax exemptions and exclusions that they do not benefit from, despite their similar situations. But the district court granted the Commissioner's motion to dismiss for lack of subject matter jurisdiction, reasoning that, while the Tax Injunction Act, 28 U.S.C. § 1341, did not bar plaintiffs' claims, general principles of comity and federalism did. This latter conclusion was incorrect, and we therefore reverse and remand.

I.

Plaintiffs Commerce Energy, Inc. (which does business as Commerce Energy of Ohio, Inc.) and Interstate Gas Supply, Inc. are retail natural gas suppliers who market and sell natural gas to Ohio consumers.[1] Plaintiff Gregory Slone is an Ohio citizen who purchases natural gas from these retail suppliers. The plaintiff gas suppliers compete with local natural gas distribution companies who market and sell gas to Ohio consumers. These companies, unlike the plaintiffs, also own and operate distribution pipeline networks to deliver gas. While the plaintiff retail suppliers pay fees to use the distribution pipelines owned by the local gas distribution companies, the four local natural gas distributors are exempt from state and county sales and use taxes on their natural gas sales and instead pay a gross receipts excise tax that is lower than the taxes that retail suppliers pay. According to plaintiffs, Ohio law also excludes these local distributors from commercial activities taxes on taxable gross receipts. Finally, plaintiffs also challenge Ohio tax provisions that exclude sales of natural gas between local distributors from gross receipts taxes that the plaintiffs are subject to when they purchase natural gas from the local gas distributors.

The plaintiffs sued under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, requesting that the district court declare these exclusions and exemptions

---

[1]Because this case arises on a motion to dismiss, this Court must assume that all facts asserted in plaintiffs' complaint are true.

unconstitutional and enjoin their application. The defendant Tax Commissioner responded by moving to dismiss these claims under FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction. The court dismissed plaintiffs' complaint, reasoning that general principles of comity and federalism barred their claims. Plaintiffs appeal.

## II.

This Court reviews de novo the dismissal of a complaint under FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction. *Am. Landfill, Inc. v. Stark/Tuscarawas/Wayne Joint Solid Waste Mgmt. Dist.*, 166 F.3d 835, 837 (6th Cir. 1999).

## III.

The first issue is whether the district court properly ruled that the Tax Injunction Act did not bar plaintiffs' challenges to the constitutionality of Ohio's natural gas taxation scheme. The Act directs federal courts not to "enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy, and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341.[2] It thus deprives federal courts of jurisdiction to hear certain challenges to state tax schemes. *California v. Grace Brethren Church*, 457 U.S. 393, 396 (1982). In *Hibbs v. Winn*, 542 U.S. 88 (2004), the Supreme Court clarified the Act's scope and reach. The plaintiffs there had brought an Establishment Clause challenge to income tax credits that provided financial aid to children who attended private schools. *Id.* at 92-93. The Supreme Court held that the Act did not bar jurisdiction, and observed that for "near a half century, courts in the federal system, including the [Supreme] Court have entertained challenges to tax credits authorized by state law, without conceiving of § 1341 as a jurisdictional barrier." *Id.* at 93. The Court sharply distinguished such cases from those in which the Act had barred claims, stating that the former "[a]ll involved plaintiffs who mounted federal litigation to avoid paying state taxes (or to gain a refund of such taxes). Federal-court relief, therefore, would have operated to reduce the flow of state tax

---

[2]The parties agree that there is an adequate state-court remedy available.

revenue." *Id.* at 106. In line with the Act's primary purpose of protecting state tax revenue, the *Hibbs* Court interpreted "assessment" to mean only the "recording of liability" of the taxpayer, and thus the Act applies only to "cases in which state taxpayers seek federal-court orders enabling them to avoid paying state taxes." *Id.* at 107.  As the district court correctly recognized, the Act does not prevent "third parties from pursing constitutional challenges to tax benefits in a federal forum." *Id.* at 108. And, as with *Hibbs*, the taxpayers here are third-parties who do not "contest their own tax liability," *id.* at 92, and success on their claims would not reduce state tax income: the relief they seek would increase the state's tax revenue by eliminating some or all of the tax-reducing exemptions and exclusions.

The Tax Commissioner replies that if plaintiffs are successful then state tax revenues could theoretically decrease in the future because the natural gas distribution companies could possibly file a future lawsuit seeking to enjoin the imposition of other taxes, and, if that future lawsuit succeeded, tax revenues would decrease. This argument is strained, to say the least. Indeed, we recently rejected it: "The Act does not strip federal courts of jurisdiction over all claims that might, after this or that happens, have *some* negative impact on local revenues; it strips jurisdiction over claims seeking to enjoin the collection of State '*tax* revenue.'" *BellSouth Commc'ns, Inc. v. Farris*, 542 F.3d 499, 503-04 (6th Cir. 2008) (emphasis in original). It is thus not enough that there is some theoretical chance revenues might decrease due to a hypothetical future lawsuit; *Hibbs* tells us the Act is more straightforward: it applies only to "cases in which state taxpayers seek" to "avoid paying state taxes" where success would "operate[] to reduce

the flow of state tax revenue." *Hibbs*, 542 U.S. at 106-07.[3] We therefore affirm the district court's conclusion that the Tax Injunction Act does not bar plaintiffs' claims.

IV.

Notwithstanding the Act, the district court went on to rule that principles of comity and federalism barred plaintiffs' claims. These principles reflect a "scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts" and thus they sometimes bar federal challenges to state taxation where the Act would not. *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 102, 108 (1981). In *Fair Assessment*, the Supreme Court addressed the comity principle's applicability to suits bringing constitutional challenges to state tax laws under 42 U.S.C. § 1983. Although the question presented was narrow, *Fair Assessment*'s language was broad: "[T]axpayers are barred by the principle of comity from asserting § 1983 actions against the validity of state tax systems in federal courts" so long as "plain, adequate, and complete" state court remedies are available. *Id.* at 114-16.

Nevertheless, in *Hibbs*, the Supreme Court – without  disapproving of *Fair Assessment*'s core holding – stated that it has "relied upon 'principles of comity' . . . to preclude original federal-court jurisdiction *only* when plaintiffs have sought district-court aid in order to arrest or countermand state tax collection." *Hibbs*, 542 U.S. at 107 n.9 (emphasis added) (citing *Fair Assessment*, 454 U.S. at 107-08). Thus, while the *Hibbs* Court did not extensively address comity, it is hard to square that decision with the district court's expansive reading of *Fair Assessment*.

---

[3] For support, the Commissioner also cites *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir.1991), which the *Hibbs* Court distinguished from the case before it by stating that *Colonial Pipeline* "held that a taxpayer's suit seeking a court-ordered redistribution of Georgia's ad valorem tax system, which might have reduced plaintiff's tax bill, implicated § 1341's jurisdictional bar." *Hibbs*, 542 U.S. at 109 n.11. Yet the Commissioner improperly reads "might" to mean any hypothetical chance. Instead, *Colonial Pipeline* explained that it was not "impressed by Colonial's contention that the impact of its requested relief would act only to increase the valuation and assessment of currently undervalued property. . . . [I]mplementation of its requested relief could also have the *equally likely* alternative of *reducing* the assessments on Colonial's own property." 921 F.2d at 1242 n.8 (first emphasis added, second emphasis in original). Here, the chance of a decrease of state tax revenues is far less than "equal" to the chance of an increase.

A.

Yet there is a circuit split. The district court heavily relied on *DirecTV v. Tolson*, 513 F.3d 119 (4th Cir. 2008), which, in dismissing a § 1983 claim, rejected the idea that *Hibbs* did anything to limit an expansive reading of *Fair Assessment* because the comity principle is "broader than the Act itself, and its scope is not restricted by § 1341." *DirecTV*, 513 F.3d at 127 (citing *Fair Assessment*, 454 U.S. at 110). To the Fourth Circuit, the comity principle's breadth "was simply not before the Supreme Court in *Hibbs*." *Id.* at 127-28.

Other circuits disagree. The Seventh Circuit, for instance, has reconciled these cases by holding that *Fair Assessment* cannot bar each and every challenge to a state's taxation scheme because *Hibbs* "restrict[s] comity to cases that could tie up rightful tax revenue." *Levy v. Pappas*, 510 F.3d 755, 761 (7th Cir. 2007) (quotations omitted). *Levy* explained:

> When a plaintiff alleges that the state tax collection or refund process is singling her out for unjust treatment, then the Act and comity bar the federal action, as in *Fair Assessment*. When a plaintiff alleges that the state tax collection or refund process is giving unfair benefits to someone else, then according to *Hibbs* the Act and comity are not in play.

*Id.* at 762. Similarly, the Ninth Circuit, in *Wilbur v. Locke*, 423 F.3d 1101 (9th Cir. 2005), took at face value Hibbs's admonition that comity principles preclude jurisdiction "only when plaintiffs have sought district-court aid in order to arrest or countermand state tax collection" and observed that the plaintiffs before it sought "no such relief." 423 F.3d at 1110 (quoting *Hibbs*, 542 U.S. at 107 n.9).

Animating these courts' disagreement with the Fourth Circuit are twin concerns. First, a sweeping reading of *Fair Assessment* runs squarely against *Hibbs*'s instruction that comity guts federal jurisdiction only when plaintiffs try to thwart tax collection. *Hibbs*, 542 U.S. at 107 n.9.[4] Second, an unduly broad view of comity would render an

---

[4]In fact, the *Fair Assessment* Court did not purport to go as far as the Fourth Circuit interpreted. The *Fair Assessment* Court noted that it "need[ed] not decide . . . whether the comity spoken of would also bar a claim under § 1983 which requires no scrutiny whatever of state tax assessment practices, such as a facial attack on tax laws colorably claimed to be discriminatory as to race." *Fair Assessment*, 454 U.S.

Act of Congress – the Tax Injunction Act – effectively superfluous, as its contours would never be dispositive so long as extant "comity principles" uniformly barred challenges to state taxation. In recognizing this, the *Hibbs* Court warned lower courts that prior cases in this area are "not fairly cut loose from their secure, state-revenue-protective moorings." *Id.* at 107.

B.

The Seventh and Ninth Circuits have the more persuasive view. And, even independent of its language, *Hibbs*'s logic also compels us to reject the approach endorsed by the district court and the Fourth Circuit. In *Hibbs*, the Supreme Court affirmed *in toto* a Ninth Circuit decision that – along with holding that the Act did not bar plaintiffs' claims – had specifically addressed and rejected comity as grounds for dismissal. In fact, two Ninth Circuit judges would have voted to rehear that case en banc because they believed that the claims were barred by comity. *Winn v. Killian*, 321 F.3d 911, 913-14 (2003) (Kleinfeld, J., dissenting, joined by O'Scannlain, J.). Yet, though the Supreme Court did not extensively analyze comity, it both affirmed the Ninth Circuit in full and stated that its opinion doing so was not inconsistent with comity principles. *Hibbs*, 542 U.S. at 107-08 & n.9.

More importantly, the *Hibbs* Court stated that barring the claims before it would have been inconsistent with a series of prior Supreme Court cases reviewing challenges to state tax systems that had no jurisdictional infirmities. *Id.* at 111. Just as with a broad reading of the Act, if a broad reading of comity forbade the relief requested here, then any injunctions that compelled or led inevitably to the collection of state taxes would be called into question, including *Milliken v. Bradley*, 433 U.S. 267 (1977). *Hibbs* loudly voiced this concern: "In a procession of cases not rationally distinguishable from this one, no Justice or member of the bar of this Court ever raised a § 1341 objection that, according to the petitioner in this case, should have caused us to order dismissal of the action for want of jurisdiction." *Hibbs*, 542 U.S. at 111-12 (citing *Mueller v. Allen*, 463

---

at 107 n.4.

U.S. 388 (1983)). This same logic applies to comity. If the Tax Commissioner is correct that broad comity principles bar federal courts from hearing claims like the plaintiffs', then likely all the previous Supreme Court decisions that did not even address the Act or comity principles were decided incorrectly. *See, e.g.*, *Missouri v. Jenkins*, 495 U.S. 33, 57 (1990) (ordering state to collect taxes in amounts exceeding the ceiling set by state law). We have no choice but to respect these Supreme Court judgments.

## C.

To support the idea that comity and federalism principles bar vast swaths of state-tax challenges, the Tax Commissioner and the district court both cite and heavily rely upon this Court's pre-*Hibbs* decision, *In re Gillis*, 836 F.2d 1001 (6th Cir. 1988). Yet, though *Gillis* broadly warned that "principles of comity dictate that a federal court should not intrude into the state tax system . . . [a]s long as an adequate state remedy exists," *id.* at 1009, it also indicated that it was simply on all fours with *Fair Assessment*, and thus the above analysis reconciling *Hibbs* with *Fair Assessment* applies equally to *Gillis*. And below, the district court gave *Gillis* its broadest conceivable reading, which it felt was untouched by *Hibbs*, while the plaintiffs argue that *Hibbs* undermined or flat-out overruled *Gillis*. Yet both views are too extreme: *Gillis* does not bar jurisdiction in this case and it may be reconciled with *Hibbs*.

Indeed, we cannot resolve this case with abstract generalizations about nontextual constitutional principles of comity and federalism. And though we emphatically reject the view that these principles broadly bar from federal court nearly every state-tax challenge, we also cannot make all-encompassing decrees regarding how principles of comity and federalism will always apply; they are merely *principles*. To determine whether comity and federalism preclude jurisdiction over state taxation claims, courts must determine whether the relief requested in the pleadings would significantly intrude upon traditional matters of state taxation such that dismissal is necessary. Thus, the difference between this case and *Gillis* concerns the degree to which the claims and relief requested would intrude upon a state's power to organize,

conduct, and administer its tax scheme. In *Gillis,* the plaintiffs went too far; here, they have not.

In *Gillis*, the district court broadly certified a plaintiff class consisting of every single Kentucky citizen who owned taxable property and whose property was assessed via the challenged methods, and it had certified a defendant class of "all property valuation administrators of counties in which taxable property owned by coal, oil, or gas interests is located." *Gillis*, 836 F.2d at 1008. By contrast, the plaintiffs here are two retail natural gas suppliers and a natural gas purchaser and the sole defendant is the Ohio Tax Commissioner. If plaintiffs' claims were to succeed, the only entities affected would be four natural gas distributors and the only taxes affected would be a limited class of exemptions that apply to only these four entities. And so it is not foreseeable that Ohio would have to substantially revise its tax code if their claims succeeded, and the suggested intrusion into traditional matters of state taxation here is not significant enough to trigger comity to bar jurisdiction.

### D.

Finally, at oral argument, the Commissioner contended that if the plaintiffs' claims are ultimately successful, hundreds of thousands of Ohio consumers might see their taxes rise because in-state natural gas companies would pass any tax increase to their consumers. As a result, he argues that comity requires dismissal. We reject this argument for three reasons. First, the issue was not briefed, so we cannot take judicial notice of so complex an *ipse dixit* from the Commissioner. While economists agree that it is people and not corporations in the abstract that bear tax burdens, they disagree on who ends up footing this bill and in what proportion.[5] Some economists have argued that

---

[5]The authorities are mixed. *See, e.g.,* RICHARD A. POSNER, ECONOMIC ANALYSIS OF LAW 706 (Aspen Publishers, 3d ed. 2007) ("The burden of [corporate taxes] is normally shared between consumers and shareholders."); HARVEY S. ROSEN, PUBLIC FINANCE, (McGraw-Hill/Irwin, 6th ed. 2002); JOSEPH E. STIGLITZ, ECONOMICS OF THE PUBLIC SECTOR, (Norton, 2d ed. 1988); WILLIAM C. RANDOLPH, INTERNATIONAL BURDENS OF THE CORPORATE TAX, CONGRESSIONAL BUDGET OFFICE WORKING PAPER (2006) ("[D]omestic labor bears slightly more than 70 percent of the burden of the corporate income tax."), *available at* http://www.cbo.gov/doc.cfm?index=7503; Gregory N. Mankiw, *The Problem With the Corporate Tax*, N.Y. TIMES, June 1, 2008 ("The ultimate payers of the corporate tax are those individuals who have some stake in the company on which the tax is levied. If you own corporate equities, if you work for a corporation or if you buy goods and services from a corporation, you pay part of the corporate . . . tax.").

consumers pay all corporate taxes in the form of higher prices. Others have argued instead that the tax is borne by shareholders because supply and demand dictates that the prices of the underlying products must have already been set to maximize profits before the tax was imposed, and so any increase in prices would decrease demand; thus, shareholders bear the cost as a tax on equity capital. Or, in what seems to be the modern trend, yet other economists argue that the corporate tax burden is shared in some proportion not only by consumers and shareholders, but also by workers. This is because capital is mobile and it will flow to other investments that produce higher returns after taxes when a new tax is imposed because the imposition of new taxes lowers an activity's expected after-tax return. With less capital stock due to this capital flight, the workers become less productive and therefore earn lower wages. The point is that we must not thrust ourselves into the middle of this economic debate by blindly accepting the Commissioner's theory.

The second reason is that, in the context of whether a state tax challenge is barred from federal court by principles of comity and federalism, the Commissioner's argument is "heads I win, tails you lose." Both parties agree that if plaintiffs' success were sure to lead to a decrease in state taxes, then a federal forum would be inappropriate. *Hibbs*, 542 U.S. at 107 n.9. Yet, the Commissioner further argues that the plaintiffs' claims here would nevertheless significantly burden traditional matters of state taxation because they would *increase* state tax revenues and that increase would allegedly be passed directly to Ohio's consumers. In other words, the Commissioner contends that claims that would result in *either* a decrease *or* in an increase in state tax revenues should *both* be barred by principles of comity and federalism such that nary a state tax challenge could be heard in federal court. This would bar any and all federal challenges, inconsistent with our comity discussion above.

Third and finally, even if the Commissioner's theory that any tax burden would pass directly to Ohio consumers were correct, that would not alter our conclusion that the plaintiffs' claims are not barred by comity concerns. The Commissioner's argument seems to be that plaintiffs' challenges automatically create an impermissible burden on comity and federalism because corporate taxes are allegedly passed directly to consumers. But the fact that it might burden consumers cannot be enough: the Supreme Court has never intimated that challenges to discriminatory personal or consumption taxes may not, as a class, be heard in federal court so long as doing so would not otherwise significantly burden comity and federalism.[6] Thus, a possible injunction against the tax breaks challenged here would not impermissibly burden state taxation.

V.

In this case we reject an excessively expansive reading of the older cases discussing comity as urged upon us by the Commissioner because that reading would render an Act of Congress entirely superfluous, would ignore the Supreme Court's directive that comity strips jurisdiction "only when plaintiffs have sought district-court aid in order to arrest or countermand state tax collection," *Hibbs*, 542 U.S. at 107 n.9, and would *sub silentio* overrule a series of important cases from the lower courts and Supreme Court, including *Milliken v. Bradley*, 433 U.S. 267 (1977), *Mueller v. Allen*, 463 U.S. 388 (1983), and possibly even *Hibbs* itself. That is unacceptable. But, though principles of comity and federalism sweep somewhat more broadly than the Act, the pertinent question is whether the claims and requested relief fall within that sweep. Because comity is prudential, we can make few generalizations about when it applies. Instead, our holding is narrow: the plaintiffs here challenge only a few limited exemptions that affect four specific entities, and their success would not significantly intrude upon traditional matters of state taxation in Ohio.

---

[6]Moreover, the fact that some tax costs might affect "hundreds of thousands of consumers" is a red herring because, even if true, it tells us nothing about the magnitude of the cost or burden – all costs passed on to prices are spread among all consumers, yet that cost might still be quite small in the aggregate. Indeed, in our above analysis we already determined that plaintiffs' requested relief would not, in sum, impermissibly burden state taxation, and whether that cost is shared by shareholders, consumers, or workers must be irrelevant. The inquiry is about magnitude; it's not a headcount.

For the above reasons, we REVERSE the district court and REMAND for further proceedings.