# United States Court of Appeals
## For the First Circuit

No. 07-2682

COORS BREWING COMPANY,

Plaintiff, Appellant,

v.

JUAN CARLOS MÉNDEZ-TORRES,
Secretary of the Treasury Department of the
Commonwealth of Puerto Rico,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Torruella, Lipez, Circuit Judges,
and DiClerico,[*] District Judge.

Helgi C. Walker, with whom William S. Consovoy, Suzzette
Rodríguez-Hurley, Wiley Rein LLP, Pedro Jiménez, and Adsuar Muñiz
Goyco Seda & Pérez-Ochoa P.S.C., were on brief for appellant.
Irene S. Soroeta-Kodesh, Assistant Solicitor General, with
whom Mariana D. Negrón-Vargas, Acting Solicitor General, was on
brief for appellee.

March 30, 2009

---

[*] Of the District of New Hampshire, sitting by designation.

**TORRUELLA**, **Circuit Judge**.  Coors Brewing Company ("Coors") sued Juan Carlos Méndez-Torres, Puerto Rico's secretary of the Treasury ("the Secretary"), challenging an exemption in Puerto Rico's beer taxing scheme which specifies a lower tax rate for small brewers.  Coors alleges that the exemption is impermissibly protectionist.  Coors seeks declarations that the exemption is unconstitutional under the Commerce Clause and illegal under the Federal Relations Act, 48 U.S.C. § 741a.  Coors also seeks an injunction barring the Secretary "from allowing any taxpayer to pay only the reduced rate of tax specified" in the special exemption and requiring the Secretary to collect the full tax rate from all brewers.  The Secretary moved to dismiss, asserting a number of procedural challenges to the action.  The district court granted the motion to dismiss.  Coors appeals. After careful consideration, we reverse and remand.

## I.  Background

We recount the facts leading up to this challenge by "constru[ing] the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff." Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996).  Since this is a motion to dismiss on jurisdictional grounds, we also "may consider whatever evidence has been submitted, such as the depositions and exhibits submitted in this case." Id.  In addition to jurisdiction, the legal defense of

-2-

preclusion is also at issue, and "[p]reclusion, of course, is not a jurisdictional matter." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 293 (2005). Rather, it is an affirmative defense, which "'can be adjudicated on a motion to dismiss so long as (i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude.'" SBT Holdings, LLC v. Town Of Westminster, 547 F.3d 28, 36 (1st Cir. 2008) (footnote omitted). Though we have remarked that it is unclear whether uncertified copies of prior judgments are among these allowable sources of information, id. at 36 n.5, where no party has either disputed the authenticity of the record documents or challenged our consideration of them on appeal, we rely on them to explain the relevant background, specifically the long procedural history of related cases that the Secretary alleges are preclusive. See Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co., 547 F.3d 48, 51 (1st Cir. 2008) ("Thus, where the motion to dismiss is premised on a defense of res judicata -- as is true in the case at hand -- the court may take into account the record in the original action.").

In 1978, Puerto Rico adjusted its excise tax on beer. Under Act 37 of July 13, 1978, beer produced by small brewers (those producing less than 31 million gallons annually) was taxed

at $1.05 per gallon while large brewers were taxed at $1.60 a gallon.

The United States Brewers Association ("USBA") and several of its members quickly challenged this differential treatment in federal court, seeking an injunction against permitting the small brewers to pay less tax. The USBA contended that the small brewer exemption was designed to protect Puerto Rico's local brewers. At that time, Coors's predecessor company, The Adolph Coors Company, was a member of the USBA, but was not then distributing beer in Puerto Rico and was not a plaintiff in that action. There is no evidence or allegation that The Adolph Coors Company was itself involved in the action.

In defense of the USBA's action, the then Secretary of the Treasury sought dismissal on the basis of the Butler Act, which provides that "[n]o suit for the purpose of restraining the assessment or collection of any tax imposed by the laws of Puerto Rico shall be maintained in the United States District Court for the District of Puerto Rico." 48 U.S.C. § 872. In response, the district court abstained and directed the plaintiffs in that action to seek a remedy in state court. U.S. Brewers Ass'n v. César Pérez, 455 F. Supp. 1159, 1164 (D.P.R. 1978).

The USBA and its co-plaintiffs simultaneously appealed that ruling and filed suit in the Puerto Rico courts. In its appeal to this Court, the USBA raised the same argument Coors now

advances -- that the Butler Act did not bar federal jurisdiction over the challenge to the state tax law since the plaintiffs were not seeking to prevent the collection of a tax.  This Court did not directly resolve the interpretation of the Butler Act, but ordered the case dismissed after concluding that the claim was barred by "considerations which underlie" the Butler Act, namely "'equity practice, . . . principles of federalism . . . and the imperative need of a State to administer its own fiscal operations.'" U.S. Brewers Ass'n v. César Pérez, 592 F.2d 1212, 1214 (1st Cir. 1979) [hereinafter "U.S. Brewers"] (quoting Tully v. Griffin, 429 U.S. 68, 73 (1976)) .  Specifically, this Court held that "an order of a federal court requiring Commonwealth officials to collect taxes which its legislature has not seen fit to impose on its citizens strikes us as a particularly inappropriate involvement in a state's management of its fiscal operations." Id. at 1215.  Meanwhile, the Puerto Rico courts rejected the USBA's challenge on the merits. U.S. Brewers Ass'n v. Secretary of the Treasury, 9 P.R. Offic. Trans. 605 (P.R. 1980) [hereinafter "U.S. Brewers (P.R.)"].

In 1989, the tax rates were increased to $2.70 for large brewers and $2.15 for small brewers, thus retaining the $0.55 differential.  In 2002, Puerto Rico enacted Act 69 of May 30, 2002, which increased the large brewer tax rate to $4.05.  This law left the $2.15 tax rate in place for brewers producing less than 9 million gallons annually, and created new intermediate rates for

brewers producing between 9 and 31 million gallons. The differential between the highest and lowest rate thus increased to $1.90.

The Puerto Rico Association of Beer Importers, together with several brewers, including Coors, challenged this taxing regime in 2002 in Puerto Rico Superior Court. Shortly after commencing the action, Coors withdrew its claims without prejudice. Coors's exclusive distributor in Puerto Rico, V. Suárez, remained in the action. The Puerto Rico Superior Court dismissed the action, and the dismissal was upheld on appeal to the Puerto Rico Supreme Court. P.R. Ass'n of Beer Imps. v. Puerto Rico, 2007 TSPR 92 (P.R. 2007), cert. denied, 128 S. Ct. 1649 (2008) [hereinafter Beer Importers].[1]

Shortly after withdrawing from the Puerto Rico action, Coors filed a separate challenge to the beer tax in the United States District Court for the District of Columbia. The district court dismissed that action for want of jurisdiction under the Butler Act, citing this Court's earlier decision in U.S. Brewers. Coors Brewing Co. v. Calderón, 225 F. Supp. 2d 22, 25-26 (D.D.C. 2002) [hereinafter Calderón]. Coors settled the case on appeal, agreeing to a stipulation that the district court's judgment "determines with finality the Court's lack of jurisdiction but is

---

[1] An English translation of this case does not yet appear to have been published, but the parties in the present action have provided us with a certified translation.

-6-

without prejudice to the substantive claims that the Court lacked jurisdiction to address."  The stipulation also provided that no award of attorney's fees would be made.

Coors asserts that the market share of Puerto Rico's leading brewer, Cervecería India, grew as a result of the 2002 tax hike on large brewers.  Coors further alleges that when Cervecería India's production surpassed 9 million gallons, "Cervecería India secured a statutory amendment using expedited procedures."  Namely, Act 108 of May 6, 2004, specified that brewers producing less than 31 million gallons annually could pay the lowest tax rate on their first 9 million gallons, even if their total production exceeded 9 million gallons.  Large producers producing more than 31 million gallons continue to pay the higher rate on all of their sales.  The beer excise tax is presently codified at P.R. Laws. Ann. tit. 13, § 9521(c) (standard tax rate) and § 9574 (graduated exemption for small brewers).

In 2006, Coors filed the present action in the United States District Court for the District of Puerto Rico, again attacking the beer tax exemption for small brewers as an unconstitutional and illegal protection of local brewers.  The Secretary moved to dismiss, arguing that the Butler Act and related principles of comity barred federal jurisdiction and that the action was precluded by the prior decisions in Calderón, Beer Importers, and the Puerto Rico Supreme Court's decision in U.S.

Brewers (P.R.).    After considering a magistrate's report and recommendation, the district court issued a separate opinion finding the action barred by several independent procedural barriers, including the Rooker-Feldman doctrine, the Butler Act, the preclusive effect of Calderón, and the fact that Coors contractually bound itself to the Calderón judgment through the stipulation that resolved that action.    Coors appeals this dismissal.

In its sur-reply to the motion to dismiss, Coors attached a Treasury Opinion Letter in which the Secretary advised another governmental official that "[i]n terms of revenues uncollected due to the preferential treatment given to local beer, it is approximately $11.8 and $14.6 million for the years 2003 and 2004, respectively."  The Secretary moved to strike, arguing the letter was an unofficial internal communication.  The district court denied the motion to strike.  As explained below, the Secretary has not challenged this ruling on appeal.

## II.  Discussion

Our review is de novo.  Ramallo Bros. Printing, Inc. v. El Día, Inc., 490 F.3d 86, 89 (1st Cir. 2007) (specifying de novo review of rulings regarding res judicata and collateral estoppel); Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995) (specifying de novo review on motions to dismiss for lack of jurisdiction).

### A.  The Preclusive Effect of <u>Calderón</u>

The Secretary argues that the district court correctly found that Coors's present action is precluded  because of Coors's prior involvement in the <u>Calderón</u> decision.

"Federal law determines the preclusive effect of a judgment previously entered by a federal court." <u>Pérez</u> v. <u>Volvo Car Corp.</u>, 247 F.3d 303, 311 (1st Cir. 2001).  Specifically, under res judicata, or claim preclusion, "'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" <u>Id.</u> (quoting <u>Allen</u> v. <u>McCurry</u>, 449 U.S. 90, 94 (1980)). To trigger claim preclusion, there must be "'(1) a final judgment on the merits in an earlier suit, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two suits.'"  <u>Id.</u>  (quoting <u>González</u> v. <u>Banco Cent. Corp.</u>, 27 F.3d 751, 755 (1st Cir. 1994)).

By contrast, collateral estoppel, or issue preclusion, means that when a factual or legal issue "has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." <u>Ramallo Bros.</u>, 490 F.3d at 89-90 (internal quotation marks omitted).  Collateral estoppel applies where "(1) the issue sought to be precluded in the later action is the same as that involved in the earlier action;

-9-

(2) the issue was actually litigated; (3) the issue was determined by a valid and binding final judgment; and (4) the determination of the issue was essential to the judgment."  Id. at 90.

Neither the district court's opinion nor the parties' arguments on appeal are consistent as to which preclusion doctrine they rely upon.  As it turns out, the distinction becomes important in this case.  A dismissal for lack of subject matter jurisdiction does not trigger claim preclusion.  Muñiz Cortés v. Intermedics, Inc., 229 F.3d 12, 14 (1st Cir. 2000) ("[A] dismissal for lack of subject matter jurisdiction is not considered to be 'on the merits,' and therefore is without res judicata effect.");  see also Dávila v. Delta Air Lines, Inc., 326 F.3d 1183, 1188 (1st Cir. 2003) (stating that a dismissal for lack of subject matter jurisdiction "plainly is not an adjudication on the merits that would give rise to a viable res judicata defense").  But, as we have said, "even assuming arguendo that res judicata does not bar the federal district court from adjudicating appellants' *claims*, the doctrine of collateral estoppel prevents the court from rehearing the *issue* of preemption."  Muñiz Cortés, 229 F.3d at 14 (emphasis in original) (responding to an argument analogizing preclusion of preemption to preclusion of subject matter jurisdiction).  Accordingly, "[d]ismissal for lack of subject matter jurisdiction precludes relitigation of the issues determined in ruling on the jurisdictional question."  Id.  Thus, claim

-10-

preclusion is of no effect with regard to the Calderón decision,
since there was no adjudication on the merits of any of Coors's
claims in that case.  Rather, that judgment represents only a
determination on the issue of subject matter jurisdiction.  For
these reasons, we conclude that the preclusive effect of the
Calderón judgment must be assessed through the lens of issue
preclusion rather than claim preclusion.  See also 18A Charles Alan
Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and
Procedure § 4436 (2d ed. 2008) [hereinafter Federal Practice]
("Although a dismissal for lack of jurisdiction does not bar a
second action as a matter of claim preclusion, it does preclude
relitigation of the issues determined in ruling on the jurisdiction
question.").[2]

---

[2]  But see Dozier v. Ford Motor Co., 702 F.2d 1189, 1195 (D.C. Cir.
1983) (Scalia, J.) (agreeing that "the doctrine of res judicata has
application to questions of jurisdiction as well as to other
issues, that it ordinarily precludes subsequent challenge to a
finding that jurisdiction *does* exist, and that it precludes
subsequent challenge to a finding of *non*-jurisdiction" (citations
and internal quotation marks omitted) (emphasis in original));
Hadge v. Second Fed. Sav. & Loan Ass'n, 409 F.2d 1254, 1257 (1st
Cir. 1969) ("[T]he principle of res judicata applies to a finding
of lack of subject matter jurisdiction. We believe that, when the
underlying transaction is the same, collateral estoppel should also
apply." (citations omitted)).

These cases' references to the "doctrine of res judicata" and
"the principle of res judicata" should be read as broad terms that
encompass both the doctrine of claim preclusion and the doctrine of
issue preclusion.  See Cutler v. Hayes, 818 F.2d 879, 888 and n.68
(D.C. Cir. 1987) (citing Dozier, then explaining that collateral
estoppel may preclude relitigation of the jurisdictional issue, and
noting "[t]he res judicata effects of jurisdictional judgments have
variously been discussed in terms of issue preclusion and

-11-

With this clarification as to which preclusion doctrine applies, we turn to the application of that doctrine. In light of the evident fact that Coors is asserting essentially the same legal challenge against essentially the same party as in Calderón, Coors offers two specific arguments against preclusion. We address each in turn.

### 1.    The effect of the 2004 amendment to the small brewer exemption

Coors first argues that this action presents a different factual claim than the Calderón action by virtue of the changed circumstances. Specifically, Coors argues that Calderón challenged the validity of the 2002 beer excise tax, while this action challenges the beer excise tax as amended in 2004. Coors contends that the 2004 amendment had "an independently discriminatory purpose" and "significantly aggravated the commercial injury of Coors."

---

estoppel"); Restatement (Second) of Judgments § 20, cmt. b (1982). In fact, the Supreme Court has recently expressed a preference for the terms "claim preclusion" and "issue preclusion" to avoid the "confusing lexicon" of res judicata. See Taylor v. Sturgell 128 S. Ct. 2161, 2171 n.5 (2008); see also id. at 2171 ("The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'"). Having so clarified the ambiguity in the use of the term "res judicata," there is no tension between Dozier and our conclusion that a dismissal for lack of subject matter jurisdiction must be analyzed under the doctrine of issue preclusion and not claim preclusion. And to the extent that Hadge must be read as stating that both apply, it has clearly been overruled by the circuit precedent cited above.

Though Coors cites some precedent to argue that a change in statutory language can be enough to defeat claim preclusion, here we apply only issue preclusion to the question of subject matter jurisdiction. This makes sense as the Calderón decision was without prejudice as to Coors's claims regarding the "discriminatory purpose" of the statute. The change in the tax statute in 2004, while perhaps relevant to the question of "discriminatory purpose," is irrelevant to Coors's subject matter jurisdiction arguments, which turn on the proper construction of the Butler Act and related principles of comity. Thus, on this issue, it is immaterial that Puerto Rico amended the beer excise tax in 2004. An immaterial change is not sufficient to defeat issue preclusion. See Ramallo Bros., 490 F.3d at 90 ("While we acknowledge that changed circumstances may defeat collateral estoppel, collateral estoppel remains appropriate where the changed circumstances are not material."). Therefore, the 2004 amendment is not a changed circumstance that would allow Coors to relitigate the jurisdictional issue.

### 2. The effect caused by a subsequent change in the controlling law

Coors next contends that a change in the legal landscape since Calderón limits the preclusive effect of the earlier judgment. Namely, Coors argues that the Supreme Court decision in Hibbs v. Winn, 542 U.S. 88 (2004), changed the controlling interpretation of the Butler Act. See infra Section II.B.1. The

-13-

parties take competing positions regarding the effect of a change in law on preclusion. Each side cites caselaw in support of its position. As our discussion will show, the caselaw is not entirely clear. We believe that (at least some of) the confusion regarding this issue stems from conflation of claim and issue preclusion. Though we have already ruled that claim preclusion does not apply in this case, we will analyze the effect of a change in law on both claim and issue preclusion in order to clarify the parties' conflicting interpretations of the caselaw.

As the Secretary correctly argues, "the res judicata consequences of a final, unappealed judgment on the merits" are not "altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case." Federated Dep't Stores v. Moitie, 452 U.S. 394, 398 (1981).[3] And Coors correctly argues that issue preclusion "'may be

_____

[3] Coors disputes this proposition by citing to State Farm Mut. Auto. Ins. Co. v. Duel for the proposition that "res judicata is no defense where between the time of the first judgment and the second there has been an intervening decision or a change in the law creating an altered situation." 324 U.S. 154, 162 (1945). But this decision appears to have been overruled by Federated. See also Forsman v. Chater, No. 94-36029, 1996 WL 396718, at *1 (9th Cir. July 12, 1996) (concluding that Federated overruled State Farm).

It is also worth noting that some courts have recognized exceptions to this doctrine for "moment[o]us changes in important, fundamental constitutional rights." Precision Air Parts, Inc. v. Avco Corp., 736 F.2d 1499, 1504 (11th Cir. 1984). Coors suggests Hibbs may be such a change. But Hibbs only changed the interpretation of the Butler Act, and not any of Coors substantive constitutional rights. In any event, as we have explained above,

-14-

defeated by showing . . . that there has been a substantial change in the legal climate suggesting a new understanding of the governing legal rules that may require a different application.'" Global NAPs, Inc. v. Mass. Dep't of Telcoms. & Energy, 427 F.3d 34, 45 (1st Cir. 2005) (quoting 18 Federal Practice § 4425); see also Commissioner v. Sunnen, 333 U.S. 591, 600 (1948) ("[A] judicial declaration intervening between the two proceedings may so change the legal atmosphere as to render the rule of collateral estoppel inapplicable."). This position is supported by the Restatement, which explains that relitigation of an issue in a subsequent action is permitted where "[t]he issue is one of law" and "a new determination is warranted in order to take account of an intervening change in the applicable legal context." Restatement (Second) of Judgments § 28(2) (1982); see also O'Leary v. Liberty Mut. Ins. Co., 923 F.2d 1062, 1069 (3d Cir. 1991) (citing the above Restatement section, but concluding it was inapplicable where a plaintiff sought to relitigate the same dispute regarding the same transaction, i.e. the same claim).[4]

we analyze this issue under the rubric of issue preclusion, not claim preclusion.

[4] Contra Precision Air Parts, 736 F.2d at 1503 ("The general rule in this circuit, and throughout the nation, is that changes in the law after a final judgment do not prevent the application of res judicata and collateral estoppel, even though the grounds on which the decision was based are subsequently overruled." (footnote omitted)).

A review of the appeals court cases citing this case shows that

-15-

Wright and Miller have observed the distinction between claim preclusion and issue preclusion with regard to the effects of a later change in controlling precedent. Compare 18 Federal Practice § 4425 ("[Issue] [p]reclusion is most readily defeated by specific Supreme Court overruling of precedent relied upon in reaching the first decision.") with 18 Federal Practice § 4415 ("Change in the controlling principles of law ordinarily does not warrant denial of claim preclusion."). Those authors have attempted to explain this distinction by noting that "[i]ssue preclusion often serves more limited purposes than claim preclusion," and explaining that there can be no reasonable reliance or repose placed upon the resolution of the claim presented in the first action when only issue preclusion applies. Id. This rule makes sense here. Coors's claim was not conclusively rejected in Calderón. The Secretary could not reasonably rely on Calderón as a final adjudication of Coors's substantive claims of infringement of its constitutional rights. Rather, the ruling was simply that the court did not have jurisdiction to address those claims. Since the governing

the case is mainly cited for the proposition that a change in law does not prevent application of res judicata (i.e. claim preclusion). E.g., North Ga. Elec. Membership Corp. v. City of Calhoun, 989 F.2d 429, 433-34 (11th Cir. 1993) (citing Precision Air Parts, while at the same time citing Sunnen for the proposition that a change in the governing legal principles can prevent the application of issue preclusion). Thus, we conclude that this Precision Air Parts statement is not good law with respect to issue preclusion.

interpretation of the jurisdictional law has changed in the interim, it makes little sense to use the Calderón ruling on subject matter jurisdiction to collaterally estop a new inquiry into that limited issue.

The Secretary and the district court do cite cases which are clearly contrary to our conclusion that a change in law renders inapplicable the preclusive effect of a prior dismissal for lack of subject matter jurisdiction. See Stewart Sec. Corp. v. Guar. Trust Co., 597 F.2d 240, 242 (10th Cir. 1979) (finding a prior dismissal for lack of subject matter jurisdiction served to bar, under principles of res judicata, a later action, despite an intervening decision on the issue of jurisdiction); Barzin v. Selective Serv. Local Bd. No. 14, 446 F.2d 1382, 1383 (3d Cir. 1971) (same). But these cases' holdings were based on the idea that res judicata, i.e. claim preclusion, is not affected by a change in the law. As explained above, we agree with this proposition. Nonetheless, we believe that these cases are simply incorrect insofar as they discuss preclusion of the issue of subject matter jurisdiction under the rubric of claim preclusion. See Matosantos Commer. Corp. v. Applebee's Int'l, Inc., 245 F.3d 1203, 1209-10 and n.4 (10th Cir. 2001) (collecting cases to support the proposition that a jurisdictional dismissal is analyzed under collateral estoppel rather than the "broader" res judicata, correcting Stewart Securities mislabeling of the term, but not discussing the effect

of intervening change in law). Wright and Miller have also criticized <u>Stewart Securities</u> and <u>Barzin</u>:

> Some decisions have precluded relitigation of subject-matter jurisdiction even in face of strong arguments that there had been changes in controlling law between the time of the first action and the second action. These decisions seem to carry direct estoppel too far. So long as the claim itself is not precluded, the interest in allowing access to a properly available federal forum suggests that reconsideration should be freely available whenever a cogent claim is made that the law has changed. Principles of stare decisis afford sufficient protection against undue efforts to avoid preclusion on this score.

18 <u>Federal Practice</u> § 4418 (footnote, which includes citation to <u>Stewart Securities</u> and <u>Barzin</u>, omitted). Analyzed properly as a matter of issue preclusion, we conclude that it is improper to preclude relitigation of the issue of subject matter jurisdiction where there has been a substantial intervening change in the controlling law.

Considering this clarification of the controlling principles of law, application to this case is straightforward. Based on our analysis below, <u>see</u> <u>infra</u> Section II.B.1, it is clear that <u>Hibbs</u> did effect a substantial change in the controlling principles regarding interpretation of the Butler Act. Therefore, <u>Hibbs</u>'s change in the law defeats any issue-preclusive effect of the <u>Calderón</u> decision. Since, as we have explained, the <u>Calderón</u> ruling on subject matter jurisdiction has no claim preclusive

-18-

effect, that action likewise does not claim-preclude this action. Therefore, we conclude the district court erred in finding that the decision of the jurisdictional issue in the <u>Calderón</u> action precluded consideration of that issue in this suit.

### 3. The effect of the stipulation

Nonetheless, we cannot yet conclude our discussion of the <u>Calderón</u> decision. The Secretary argues, and the district court held, that Coors is also barred from relitigating the issue of subject-matter jurisdiction by virtue of its stipulation to the dismissal of the <u>Calderón</u> action. According to this argument, Coors bargained away the right to bring another suit in exchange for a concession that the <u>Calderón</u> defendants would not seek attorney's fees. We disagree with this interpretation.

The stipulation is not a settlement agreement. Coors did not promise never to bring another suit. A plain reading of the stipulation's terms shows only that Coors agreed to have a particular judgment entered against it. To the extent Coors was contractually bound to do anything under the stipulation, it was bound to accept the judgment and end its appeal. Coors did that, and was left with the judgment of the district court dismissing the action for lack of subject matter jurisdiction. We have already analyzed the preclusive effect of that judgment and held that it does not bar this action. There is nothing else in the stipulation that has any greater effect.

Accordingly, we conclude that neither the Calderón stipulation nor judgment is a bar to this action.

### B. Subject Matter Jurisdiction

#### 1. The Butler Act

Having concluded that neither claim preclusion nor issue preclusion bars consideration of the jurisdictional issue, we proceed to analyze that issue. Of course, the district court would have subject matter jurisdiction over the federal questions Coors raises under 28 U.S.C. §§ 1331 and 1343. But, the Butler Act places a limit on federal jurisdiction. Specifically, as we stated above, the Butler Act provides, "[n]o suit for the purpose of restraining the assessment or collection of any tax imposed by the laws of Puerto Rico shall be maintained in the United States District Court for the District of Puerto Rico." 48 U.S.C. § 872. We have consistently read this act to be a close analogue to the Tax Injunction Act ("TIA") applicable to Puerto Rico. UPS v. Flores-Galarza, 318 F.3d 323, 330 n.11 (1st Cir. 2003) ("The two statutes employ different language (i.e. the Tax Injunction Act includes an express exception that the Butler Act lacks), but 'have been construed *in pari materia*.'" (quoting Trailer Marine Transp. Corp. v. Rivera-Vázquez, 977 F.2d 1, 5 (1st Cir. 1992))).[5]

---

[5] The TIA states, "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341.

-20-

In the present action, Coors has asked a federal court to invalidate the small brewer exemption and order Puerto Rico to assess the higher tax rate against small brewers. Coors argues that since it does not seek to decrease the tax it pays, the Butler Act is no bar to the requested relief. This distinction between restraining collection and ordering more collection was not well received in the prior actions. U.S. Brewers, 592 F.2d at 1214; Calderón, 225 F. Supp. 2d at 26-27. But, since those decisions, the Supreme Court has accepted a similar argument in Hibbs, 542 U.S. at 104-07.

In that case, Arizona taxpayers sued the director of Arizona's Department of Revenue seeking to enjoin provision of tax credits for taxpayers who made donations to "school tuition organizations," which were permitted to fund religious educational organizations. Id. at 92. The director argued the suit was barred by the TIA. Id. The Supreme Court found that the action was not barred since the plaintiffs did not seek to challenge their own tax liability, and thus did not endanger the collection of state tax revenue. Id. at 104-05. The Court explained:

> In short, in enacting the TIA, Congress trained its attention on taxpayers who sought to avoid paying their tax bill by pursuing a challenge route other than the one specified by the taxing authority. Nowhere does the legislative history announce a sweeping congressional direction to prevent federal-court interference with all aspects of state tax administration.

-21-

Id. (internal quotation marks omitted). The Court inventoried prior TIA precedents and explained that they are "not fairly portrayed cut loose from their secure, state-revenue-protective moorings." Id. at 106. Specifically, the TIA has been applied "only in cases Congress wrote the Act to address, i.e., cases in which state taxpayers seek federal-court orders enabling them to avoid paying state taxes." Id. at 107. The Court also cataloged a number of historical cases of third-party challenges to tax benefits that had proceeded without any party mentioning the TIA. Id. at 110-12. This catalog led the Court to conclude that "[c]onsistent with the decades-long understanding prevailing on this issue, respondents' suit may proceed without any TIA impediment." Id. at 112. Ultimately, since the plaintiffs in Hibbs did not seek to avoid paying state taxes, their action was not barred. Id.

Hibbs's holding regarding the proper understanding of the TIA shows that the Butler Act is similarly no bar to Coors's action. Coors does not seek to lower the tax rate on itself. Rather, it alleges that a special exemption built into Puerto Rico's tax code provides an illegal and unconstitutional benefit to local brewers. If this claim succeeds on the merits and Coors obtains the relief its requests, Coors's tax liability will be unchanged. In this way, Coors's challenge to the small brewer exemption is analogous to the plaintiffs' claim in Hibbs. Thus,

-22-

since the Butler Act is read in parallel to the TIA, and since it similarly only restricts the district courts from entertaining suits "for the purpose of restraining the assessment or collection" of taxes of Puerto Rico, we read it, according to Hibbs, to only apply where plaintiffs seek to challenge taxes in a way that would reduce the flow of state tax revenue. See May Trucking Co. v. Oregon Dep't of Transp., 388 F.3d 1261, 1267 (9th Cir. 2004) ("After Hibbs, the dispositive question in determining whether the Act's jurisdictional bar applies is whether '[f]ederal-court relief . . . would have operated to reduce the flow of state tax revenue.'" (quoting Hibbs, 542 U.S. at 106)).

Against this conclusion, the Secretary contends that the fact that Coors's tax liability will be unchanged is irrelevant since federal court interference with the small brewer exemption could have the effect of lowering tax revenue. Specifically, the Secretary contends that a court-mandated increase of the tax rates on small brewers could affect the market in such a way as to ultimately reduce demand to the point where tax revenues suffer. The Secretary points to a recent Tenth Circuit decision interpreting Hibbs. See Hill v. Kemp, 478 F.3d 1236 (10th Cir. 2007). In that case, plaintiffs challenged a state law that authorized the state Tax Commissioner to issue specialized license plates and use the funds for certain designated causes. Id. at 1239-41. Specifically, the plaintiffs protested the inclusion of

-23-

license plates with a pro-life message when no pro-choice license plates were available on similar terms. Id. The Hill plaintiffs sought to enjoin the issuance of the challenged specialty license plates. Id. at 1242 n.4. The plaintiffs contended that enjoining license plates would not affect revenues as the state could issue specialized license plates under a content-neutral approach. Id. at 1250. In rejecting this argument, the court stated,

> there is simply nothing in the TIA or Hibbs suggesting that federal courts can entertain challenges to state taxes on the basis of predictive judgments that doing so will not harm state coffers; rather our jurisdiction is precluded by the plain language of the TIA in all cases seeking to enjoin the levy or collection of taxes under State law.

Id. This result was required, according to Hill, since otherwise "judges might be free to become second rate, supply-side economists, hazarding guesses that enjoining this or that revenue raising measure would help rather than hurt overall tax collections." Id. The Secretary thus argues that we should, like the Hill court, refrain from making any economic speculation on the effect of an injunction against the small brewer exemption.

We find this argument unpersuasive. First and foremost, in this case we have record evidence that the Secretary has admitted that $11.8 to $14.6 million in revenue goes "uncollected due to the preferential treatment given to local beer."[6] The

_____

[6] Except to say that he has "duly and consistently opposed admission of the letter," the Secretary has not challenged the

-24-

Secretary argues that this statement was made under the assumption that production would remain unchanged. But, earlier in the same letter, the Secretary also estimated that a proposed tax increase to $3.50 per gallon on small brewers would result in an increase in revenue of $8.3 million, even accounting for a decrease in production. Further, the Secretary's briefing to the district court admitted that "Coors' injunctions sought here would, if issued, have the effect of increasing revenue 'collection.'"

Second, even without these admissions, Hill is distinguishable. In that case, plaintiffs sought to enjoin a tax which generated revenue. Id. at 1245-46 (ruling that the license plate regime was a "tax"). By contrast, Coors does not seek to enjoin the operation of a revenue-generating mechanism. Unlike in Hill, where the market response to the elimination of a certain product (namely pro-life license plates) might be genuinely hard to predict, the elimination of a special tax exemption is much more likely to increase rather than decrease revenues. In other words, it would require greater economic speculation on our part to reach a conclusion that an injunction against the small brewer exemption would hurt, rather than improve, tax revenues. Where the

admissibility of this letter on appeal. Accordingly, we deem any argument that we should not now consider it to be waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (recognizing "settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

-25-

plaintiffs challenge a provision affording lower tax treatment to certain individuals, such a speculative possibility is not enough to foreclose jurisdiction. See Commerce Energy, Inc. v. Levin, 554 F.3d 1094, 1097 (6th Cir. 2009) ("It is thus not enough that there is some theoretical chance revenues might decrease due to a hypothetical future lawsuit; Hibbs tells us the Act is more straightforward: it applies only to 'cases in which state taxpayers seek' to 'avoid paying state taxes' where success would 'operate[] to reduce the flow of state tax revenue.'" (quoting Hibbs, 542 U.S. at 106-07)).

The Secretary makes another argument based on Hill. The Hill court observed that Hibbs involved the "somewhat unusual circumstance . . . of citizens seeking to eliminate tax credits" whereas Hill involved "an effort expressly aimed at preventing the State from exercising its sovereign power to collect certain revenues," which was more like the "traditional heartland of TIA cases." Hill, 478 F.3d at 1250. The Secretary argues that since Coors's action is not a challenge to a tax credit, but rather to a tax exemption, it is also more similar to the kind of action traditionally barred by the TIA. We fail to see the distinction in this context between a tax credit and a tax exemption. The Hibbs court did not rely on the mechanism through which the challenged state tax relief was afforded, but rather on the fact that the relief plaintiffs sought would not endanger state tax revenues.

-26-

<u>Hibbs</u>, 542 U.S. at 109 (noting that the TIA's legislative history showed no concern "'about federal courts' flogging state and local governments to collect additional taxes.'" (quoting <u>Dunn</u> v. <u>Carey</u>, 808 F.2d 555, 558 (7th Cir. 1986))). Thus, this case is more like <u>Hibbs</u> than <u>Hill</u>; rather than eliminate a potential source of revenue, the relief Coors requests would simply eliminate a tax law affording preferential tax treatment to certain taxpayers. Accordingly, we conclude that under <u>Hibbs</u>, Coors's action is not barred by the Butler Act.

## 2. Related principles of comity

The Secretary contends that even if Coors's action is not barred by the Butler Act, it is barred by the related principles of comity[7] that we relied upon in <u>U.S. Brewers</u>, 592 F.2d at 1214.

---

[7] As has been explained in another context, comity can be defined as

> a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. . . . What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

<u>Younger</u> v. <u>Harris</u>, 401 U.S. 37, 44 (1971). We hold, as described

-27-

Certainly that court rejected arguments very similar to those raised now by Coors when it concluded that those principles would be "ill-served" by the "technical distinction" between restraining the imposition of a lower rate on small brewers and a direct challenge to plaintiffs' higher rate. Id. at 1214-15. We further stated that "an order of a federal court requiring Commonwealth officials to collect taxes which its legislature has not seen fit to impose on its citizens strikes us as a particularly inappropriate involvement in a state's management of its fiscal operations." Id. at 1215.

If not for Hibbs, U.S. Brewers would control the resolution of this action. Whether the principles of comity described in U.S. Brewers are intact after Hibbs is an open question that has already engendered a circuit split. The Sixth and Seventh Circuits have adopted a narrowed view of comity principles in light of Hibbs. Commerce Energy, 554 F.3d at 1098-99 (describing the split and endorsing a narrow view of comity by allowing an energy company to challenge alleged preferential tax treatment of local natural gas distributors); Levy v. Pappas, 510 F.3d 755, 761-62 (7th Cir. 2007) (finding comity still alive after

_____

in the text, infra, that comity is no bar to this action. This holding is in no way a statement that state courts cannot vindicate and protect federal rights. Rather, it is a recognition, based on Hibbs, that federal court protection of federal rights through orders that do not arrest and countermand state tax collection do not constitute undue interference with the administration of the state tax scheme.

Hibbs, but concluding that it is limited such that "[w]hen a plaintiff alleges that the state tax collection or refund process is giving unfair benefits to someone else, then according to Hibbs the Act and comity are not in play"). The Ninth Circuit has also suggested that Hibbs limited the reach of comity in this context. Wilbur v. Locke, 423 F.3d 1101, 1110 (9th Cir. 2005) (finding no comity bar where plaintiffs sought an injunction barring the state from entering into cigarette tax contract with the Swinomish Indian Tribe, since such relief was not countermanding state tax collection).

On the other hand, the Fourth Circuit has relied on U.S. Brewers, even after Hibbs, to refuse jurisdiction over a challenge to a state tax regime's allegedly preferential treatment of cable companies over satellite TV companies. DIRECTV, Inc. v. Tolson, 513 F.3d 119, 126-28 (4th Cir. 2008). In judging U.S. Brewers to be good law, the Fourth Circuit recognized that Hibbs discussed the Court's prior comity precedent. Id. at 127. The Fourth Circuit saw this discussion as the Court's way of "underscor[ing] the unusual claim before the Court in Hibbs." Id. The Fourth Circuit also relied on earlier comity precedent for the proposition that "the comity principle underlying the TIA is broader than the Act itself, and its scope is not restricted by [the TIA]." Id. (citing Fair Assessment in Real Estate Ass'n v. McNary, 454 U.S. 100, 110 (1981) (holding that principles of comity bar challenges to state

-29-

tax law which seek money damages under 42 U.S.C. § 1983)).  The Fourth Circuit also concluded that <u>Hibbs</u> itself saved <u>U.S. Brewers</u> by distinguishing it on the grounds that <u>U.S. Brewers</u> was not a case interpreting the TIA.  <u>Id.</u> at 128 n.5.

The Fourth Circuit's position is not convincing.  In <u>Hibbs</u>, Arizona similarly advanced arguments based on principles of comity.  <u>See</u> <u>Winn</u> v. <u>Killian</u>, 307 F.3d 1011, 1018 (9th Cir. 2002) (explicitly rejecting plaintiffs' comity arguments), <u>aff'd by</u> <u>Hibbs</u>, 542 U.S. 88; <u>see also</u> <u>Winn</u> v. <u>Killian</u>, 321 F.3d 911, 913-914 (9th Cir. 2003) (Kleinfield, J., dissenting from denial of en banc rehearing) (asserting that principles of comity barred the action). The Supreme Court was not swayed, but instead announced that "this Court has relied upon 'principles of comity,' to preclude original federal-court jurisdiction only when plaintiffs have sought district-court aid in order to arrest or countermand state tax collection."  <u>Hibbs</u>, 542 U.S. at 107 n.9 (citation omitted).  The Court's statements in this regard were not made in connection with narrowly construing the facts of the case, but rather were made as part of a survey of the state of the law.  <u>Id.</u> at 106-07 ("Our prior decisions are not fairly portrayed cut loose from their secure, state-revenue-protective moorings.").

The Fourth Circuit and the Secretary both rely on the fact that <u>Hibbs</u> cited <u>U.S. Brewers</u> in a footnote.  <u>See</u> <u>id.</u> at 109-10 n.11.  In that footnote, the Court recognized that <u>U.S. Brewers</u>

was not based on the Butler Act, but on principles of comity, and quoted U.S. Brewers's admonition against ordering a state to collect a tax not authorized by its legislature. Id. But unlike the Secretary, we do not read this footnote as condoning the result in U.S. Brewers. Rather, the entire footnote is devoted to discussing cases raised by Arizona which were in obvious tension with the Court's holding. Id. While the Court made some effort at distinguishing some of the cases, it made little attempt at distinguishing others. Id. (recognizing and explaining, but not explicitly abrogating, the contrary ruling in ACLU Foundation v. Bridges, 334 F.3d 416 (5th Cir. 2003) and the arguably inconsistent ruling in In re Gillis, 836 F.2d 1001 (6th Cir. 1988)). The Court did observe that U.S. Brewers was based on principles of comity related to the Butler Act, and not the TIA. Id. But this observation cannot serve to save U.S. Brewers since the Butler Act is read analogously to the TIA and since the Hibbs Court also limited principles of comity under the TIA. In light of the surrounding discussion, and considering the earlier footnote limiting the scope of comity, we read the Court's citation to U.S. Brewers simply as an acknowledgment of a related case, and not as an endorsement of its result.

Our conclusion is supported by the Sixth Circuit. That court recognized that reading earlier comity caselaw, including Fair Assessment, to permit the broad use of comity in a situation

-31-

like this one, "runs squarely against Hibbs's instruction that comity guts federal jurisdiction only when plaintiffs try to thwart tax collection." Commerce Energy, 554 F.3d at 1099. Similarly, as that court explained, "an unduly broad view of comity would render an Act of Congress -- the Tax Injunction Act -- effectively superfluous, as its contours would never be dispositive so long as extant 'comity principles' uniformly barred challenges to state taxation." Id. The Sixth Circuit also noted that the Hibbs Court reasoned that the "decades-long understanding" that the TIA was no bar was revealed by the fact that other challenges to state tax law proceeded without reference to the TIA. Id.; see also Hibbs, 542 U.S. at 112. Using the same reasoning suggests that comity is no bar as those same cases also proceeded without reference to comity. Commerce Energy, 554 F.3d at 1099-1100. These reasons provided by the Sixth Circuit, combined with our own analysis of Hibbs described above, lead us to conclude that comity does not bar federal courts from hearing suits seeking to invalidate state tax laws that afford preferential tax treatment to third parties where such challenge would not arrest state revenue generation.

This is not to say that principles of comity are of no further effect. As recognized in Hibbs, Fair Assessment is still good law; plaintiffs may not circumvent the TIA or the Butler Act by challenging their tax liability through an action seeking money damages. See id. at 1098 (discussing Fair Assessment). But,

-32-

properly read, Hibbs confined principles of comity to cases seeking to arrest or countermand state tax collection.

It remains the case that Coors seeks "an order of a federal court requiring Commonwealth officials to collect taxes which its legislature has not seen fit to impose on its citizens." U.S. Brewers, 592 F.2d at 1215. But, since Coors seeks an injunction eliminating an exemption and therefore does not seek to arrest state tax collection, comity is no bar to such a result. See Hibbs, 542 U.S. at 93 (citing Griffin v. County Sch. Bd., 377 U.S. 218, 233 (1964) as a case where the Court acted without regard to the TIA (or related comity concerns) since, when the Court was "faced with unconstitutional closure of county public schools and tuition grants and tax credits for contributions to private segregated schools," it concluded that the "District Court could require county to levy taxes to fund nondiscriminatory public schools" (emphasis added)).

This conclusion means that our decision in U.S. Brewers is no longer good law, which we are not bound to follow. United States v. Rodríguez-Pacheco, 475 F.3d 434, 441 (1st Cir. 2007) (recognizing an exception to stare decisis where "'[a]n existing panel decision [is] undermined by controlling authority, subsequently announced, such as an opinion of the Supreme Court'" (quoting Williams v. Ashland Eng'g Co., 45 F.3d 588, 592 (1st Cir. 1995))).

In sum, Hibbs effected a change in the law such that neither the Butler Act nor related principles of comity serve to bar Coors's complaint.

### C. The Preclusive Effect of U.S. Brewers (P.R.) and the Applicability of the Rooker-Feldman Doctrine

We turn to another set of asserted bars to this action based on the effects of the Puerto Rico Supreme Court's decision in U.S. Brewers (P.R.).

### 1. The Rooker-Feldman doctrine

The district court reasoned that the Rooker-Feldman doctrine served to bar this action as an impermissible attack on the state court judgment in U.S. Brewers (P.R.). We disagree. The Rooker-Feldman doctrine prevents federal district courts from hearing "'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" Lance v. Dennis, 546 U.S. 459, 464 (2006) (quoting Exxon Mobil, 544 U.S. at 284). Puerto Rico is treated as a state for these purposes. Puerto Ricans for P.R. Party v. Dalmau, 544 F.3d 58, 68 (1st Cir. 2008). But Coors was not a party to the action in U.S. Brewers (P.R.), and so is not a "state-court loser." States Res. Corp. v. The Architectural Team, Inc., 433 F.3d 73, 79 (1st Cir. 2005). The district court nonetheless reasoned that Coors was legally represented by the USBA, as Coors's legal predecessor was a member

-34-

of the USBA.  But "[t]he Rooker-Feldman doctrine does not bar actions by nonparties to the earlier state-court judgment simply because, for purposes of preclusion law, they could be considered in privity with a party to the judgment."  Lance, 546 U.S. at 466 ("Whatever the impact of privity principles on preclusion rules, Rooker-Feldman is not simply preclusion by another name.").  Furthermore, Coors is not attacking the state court judgment, but simply seeking to raise a challenge to the same exemption previously upheld in U.S. Brewers (P.R.).  The Rooker-Feldman doctrine is no bar to such an independent claim.  Exxon Mobil, 544 U.S. at 293; Davison v. Gov't of P.R.-P.R. Firefighters Corps., 471 F.3d 220, 222-23 (1st Cir. 2006).  For each of these reasons, we reject the application of the Rooker-Feldman doctrine to this case.

## 2.  Preclusion

The Secretary argues that we may nonetheless affirm the district court's dismissal of Coors's complaint on the ground that it is precluded by U.S. Brewers (PR).

Whereas we applied federal law of preclusion in analyzing the effect of a federal court judgment, we now turn to Puerto Rico law to determine the preclusive effect of the judgment in U.S. Brewers (P.R.) on the present case.  See SBT Holdings, 547 F.3d at 36 ("Federal courts 'must give preclusive effect to state court judgments in accordance with state law.'" (quoting Mulrain v. Bd. of Selectmen, 944 F.2d 23, 25 (1st Cir. 1991))); Boateng v.

InterAmerican Univ., Inc., 210 F.3d 56, 61 (1st Cir. 2000) (stating that "Puerto Rico is, for this purpose, the functional equivalent of a state").

Under Puerto Rico law,

[i]n order that the presumption of res adjudicata may be valid in another suit, it is necessary that, between the case decided by the sentence and that in which the same is invoked, there be the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such.

P.R. Laws Ann. tit. 31, § 3343. We have explained:

Although this statute speaks of "res adjudicata," it encompasses both the doctrine of res judicata (i.e., claim preclusion) and the doctrine of collateral estoppel (i.e., issue preclusion), albeit with slightly different requirements for each.

We previously have explained that a party asserting a res judicata defense under Puerto Rico law must establish three elements: (i) the existence of a prior judgment on the merits that is "final and unappealable"; (ii) a perfect identity of thing or cause between both actions; and (iii) a perfect identity of the parties and the capacities in which they acted.

R.G. Fin. Corp. v. Vergara-Núñez, 446 F.3d 178, 183 (1st Cir. 2006) (citations omitted).

Coors argues that there is not perfect identity of cause since the USBA action challenged the special brewer's exemption prior to its amendment in 2002 and 2004. We need not reach this argument since we accept Coors's other argument that there is no sufficient identity of parties, since U.S. Brewers (PR) was

-36-

initiated by the USBA and several other off-island producers not including Coors.

On the question of identity of parties, we have explained Puerto Rico law as follows:

> The purpose of the perfect identity of parties requirement is to guarantee that the rights and obligations of a particular litigant will not be foreclosed without that litigant's knowledge or opportunity to participate. In harmony with this purpose, the Puerto Rico res judicata statute directs that:
>
>> There is identity of persons whenever the litigants of the suit are legal representatives of those who litigated in the preceding suit, or when they are jointly bound with them or by the relations established by the indivisibility of prestations[8] among those having a right to demand them, or the obligation to satisfy the same.
>
> P.R. Laws Ann. tit. 31, § 3343. This is a privity requirement, and the Puerto Rico Supreme Court has taken a "pragmatic stand" on its construction.

Id. at 185-86 (case citations omitted and footnote added).

Our prior cases applying Puerto Rican law offer some insight on the specific application of this rule to associations.

---

[8]  We have defined the term "prestations" to mean "'a performance of something due upon an obligation.'" Báez-Cruz v. Municipality of Comerío, 140 F.3d 24, 29 (1st Cir. 1998) (quoting Webster's New International Dictionary 1796 (1971)).

We have found adequate privity[9] where members of a political party bring suit after the party lost an earlier suit that those members admitted that they directly controlled. Cruz v. Melecio, 204 F.3d 14, 19 (1st Cir. 2000). But when another party member who disclaimed participation in the first suit brought yet another suit, we found no preclusion, even though the party and the new plaintiff shared interests and attorneys. Pérez-Guzmán v. Gracia, 346 F.3d 229, 234-35 (1st Cir. 2003). The Pérez-Guzmán decision distinguished Cruz specifically on the basis of the plaintiff's control of the prior suit. Id. at 234 (stating that "Cruz required proof of control as a building block in the showing of privity"). In the absence of an admission of control, the defendant asserting the preclusion defense carries the burden of establishing the defense. Id.

A trade association may arguably be more close knit than a political association. In Pérez-Guzmán we opined that the result might be different "if the appellants had proven that the Party, in the manner, say, of certain labor unions or trade associations,

_____

[9] The term "privity" is used to refer to the "substantive legal relationships justifying preclusion," and its use may be confusing. Taylor, 128 S. Ct. at 2172 n.8. Here, we use the term to mean the kind of representative or agency relationship, which, under Puerto Rico law, is sufficient to establish identity of parties. R.G. Fin. Corp., 446 F.3d at 187 ("Our prior cases establish the general rule that where one party acts for or stands in the place of another in relation to a particular subject matter, those parties are in privity for purposes of the Puerto Rico preclusion statute.").

-38-

served generally as the duly constituted representative of its members in litigation affecting common interests." Id. at 235. Though the USBA was a trade organization to which Coors's predecessor corporation belonged, the Secretary has adduced no evidence that Coors's predecessor either controlled the litigation strategy of the association or duly approved the USBA to represent its interests. To the contrary, Coors alleged that it was not even distributing beer in Puerto Rico at that time and so argues that it would not have had standing in the U.S. Brewers (PR) action, let alone the ability to control the litigation. Cf. Gen. Foods Corp. v. Mass. Dep't of Pub. Health, 648 F.2d 784, 787-88 (1st Cir. 1981) (finding preclusion based on "implied authorization" since there was more than "mere membership in a trade association," including financial contributions to the costs of the litigation by the member, together with the fact that the association's "standing to sue depended on its claim to represent its members as the real parties in interest"). Thus, on this factual record, it is proper to reach the same result as in Pérez-Guzmán: in the absence of evidence that Coors controlled the U.S. Brewers (P.R.) action, the similarity of interests between Coors and the USBA is inadequate to establish the representation or "indivisibility of prestations" required to find sufficient identity of parties under Puerto Rico law. Accord Taylor, 128 S. Ct. at 2174 (disapproving of, on due process grounds, the doctrine of virtual representation based on

identity of interests absent "special procedures to protect the nonparties' interests or an understanding by the concerned parties that the first suit was brought in a representative capacity"); id. at 2179 (suggesting that a finding that a plaintiff is the "litigating agent for a party to the earlier case" requires more than a "mere whiff of 'tactical maneuvering,'" but rather that "the putative agent's conduct of the suit is subject to the control of the party who is bound by the prior adjudication"); 18A Federal Practice § 4456 (explaining that under federal preclusion law, members of a trade association who participated in the earlier litigation should be precluded, while those who did not participate should not be precluded).  Therefore, we conclude that the prior judgment in U.S. Brewers (PR) does not provide a basis for granting the Secretary's motion to dismiss.

### D.  **The Preclusive Effect of Beer Importers**

Finally, the Secretary contends that Coors's present action is precluded by virtue of the now final judgment in the Beer Importers action, which was initiated in the Puerto Rico courts in 2002.[10]  Since Coors was also not a party to Beer Importers, we face

---

[10]  The district court did not find preclusion here since the time to file a certiorari petition in the United States Supreme Court had not, at that time, expired.  Since the certiorari petition has now been denied, the Secretary argues that res judicata now applies.  We address the issue now since the Secretary raised the issue both below and on appeal and since the issue is fully briefed.  See Ridley v. Mass. Bay Transp. Auth., 390 F.3d 65, 93 (1st Cir. 2004).

the same question as before. Namely, we must ask whether Coors was sufficiently represented in the earlier action so as to be precluded in this action. Though Coors was dismissed from that action without prejudice, the Secretary contends that Coors is bound by virtue of the participation of V. Suárez, Coors's exclusive Puerto Rican distributor. The Secretary alleges that V. Suárez pays the relevant taxes, though this fact is not established in the record.[11] In any event, as explained above, Coors is not challenging the taxes assessed on it or on V. Suárez. Rather, it asserts its market share was injured as a result of the preferential treatment given to small brewers. To be sure, this is a similar injury to the one that supplied the basis for V. Suárez's participation in the Beer Importers case. But, as we have explained, mere similarity of interests is not enough to establish privity under Puerto Rico law. Just as the mere fact of membership in an association does not change this result, neither does the mere presence of a contractual relationship between Coors and V. Suárez. See 18A Federal Practice § 4460 (explaining that "[p]arties on opposite sides of a contract ordinarily do not have authority to bind each other by litigation with third parties," but noting that specific relationships may call for determinations

---

[11] To support this fact, the Secretary directs us to a page from their memorandum of law submitted in the district court. This memorandum in turn cites to an attachment submitted in Spanish. We have held repeatedly that we cannot consider such untranslated evidence. Puerto Ricans for P.R. Party, 544 F.3d at 67.

based on the consideration of the relevant substantive law). Here the contractual relationship is an exclusive distributorship. Undoubtedly, this fact does give V. Suárez and Coors very similar interests in challenging preferential treatments for small brewers. But other than point to this similarity in interests, the Secretary offers no authority for the proposition that we must presume more from the mere fact of the exclusive distributorship. To the contrary, as Coors suggests, the applicable legal environment suggests we should presume that Coors and its distributor were arms-length contractors. See Bainbridge v. Turner, 311 F.3d 1104, 1106 (11th Cir. 2002) (explaining that most states regulate alcohol distribution so as to "require[] three vertical layers of distribution (manufacturer, distributor, and vendor) and mandate[] that no layer in the vertical hierarchy act in the capacity of another").

As explained above, absent some legal presumption based on the nature of the contractual relationship, we would require some record evidence that Coors actually controlled V. Suárez in the Beer Importers litigation. Coors has argued that it in fact had no coordination with V. Suárez after it withdrew from the case, though it also fails to adequately support this contention.[12] But,

---

[12] For this point, Coors only cites to the memoranda of law that it presented to the district court. This memorandum fails to cite evidence or allegations which we may consider. See United States v. Michaud, 925 F.2d 37, 41 (1st Cir. 1991) ("Ordinarily, assertions made in briefs and memoranda are insufficient to raise

-42-

as explained above, it is the Secretary's burden to show privity, and he has not produced any evidence showing Coors's affirmative control of, or collusion with, V. Suárez.

Thus, we find that the Secretary has failed to meet his burden of showing sufficient privity between Coors and V. Suárez, and so conclude that the prior judgment in <u>Beer Importers</u> cannot support affirming the allowance of the motion to dismiss.[13]

### III.  <u>Conclusion</u>

For all of the foregoing reasons, we find that none of the independent procedural bases for dismissal relied upon by the Secretary are persuasive.  We therefore reverse the district court's allowance of the Secretary's motion to dismiss.  The case is remanded for further proceedings consistent with this opinion.

<u>**Reversed and Remanded**</u>.

---

a cognizable issue of fact.").

[13] Coors again argues that the change in the small brewer exemption in 2004 renders <u>Beer Importers</u> non-preclusive, since that action challenged the statute as it stood in 2002.  We need not reach this argument because our finding regarding the insufficient identity of parties bars preclusion.